**LAKESHORE LAW CENTER**
**Jeffrey Wilens, Esq. (State Bar No. 120371)**
**18340 Yorba Linda Blvd., Suite 107-610**
**Yorba Linda, CA 92886**
**714-854-7205**
**714-854-7206 (fax)**
**jeff@lakeshorelaw.org**

**THE SPENCER LAW FIRM**
**Jeffrey P. Spencer, Esq. (State Bar No. 182440)**
**903 Calle Amanecer, Suite 220**
**San Clemente, CA 92673**
**949-240-8595**
**949-240-8515 (fax)**
**jps@spencerlaw.net**

**Attorneys for Plaintiff**

## UNITED STATES DISTRICT COURT,

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JAMES E. ANDREWS on behalf himself and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIRIUS XM RADIO, INC., and Does 1 through 100 inclusive,<br><br>Defendants. | Case No. 5:17-cv-01724-PA-AFMx<br>Complaint filed August 24, 2017<br>Trial Date: June 26, 2018<br>Pre-Trial Date: June 1, 2018<br>Discovery Cutoff:  April 16, 2018<br>**Class Action**<br><br>**PLAINTIFF'S MOTION TO CERTIFY CLASS, POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br>Hearing Date: Jan. 8, 2018, 1:30 pm<br>Department 9A<br>Hon. Percy Anderson |

TO EACH PARTY AND THEIR ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that on the 8th day of January 2018, at the

hour of 1:30 p.m. or as soon thereafter as counsel may be heard in

1

Department 9A of the United States District Court, Central District of California, 350 W. 1st Street, Los Angeles, CA 90012-4565, Plaintiff James E. Andrews will move for an order certifying a class pursuant to Rule 23.

The Court's local rules state "No motion shall be noticed for hearing for more than thirty-five (35) days after service of the motion unless otherwise ordered by the Court" but also that "if Monday is a holiday, the next motion date is the following Monday.) Since December 25th and January 1st are federal holidays, the hearing will have to be set past 35 days on the first available Monday, which is January 8th.

Plaintiff also alerts the Court he has concurrently filed motions to file under seal two documents (declarations) in connection with this motion. (See Docs. 31, 32.) Plaintiff has also concurrently filed a Ex Parte Application to continue the hearing date on this motion.

Said motion will be made on the grounds set forth in the accompanying memorandum of law. This motion will be based upon this notice, the points and authorities set forth below, the attached declaration(s) and Compendium of Evidence filed herewith, and the complete files and records in this action.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on November 14, 2017. On that date,

PLAINTIFF'S MOTION TO CERTIFY CLASS—17-CV-1724-PA

Plaintiff's counsel met and conferred with defense counsel Thomas Demitrack regarding this motion for class certification.  The Parties were unable to reach a resolution and Defense Counsel stated that Defendant would oppose class certification and also believed the lawsuit had no merit. He also declined to stipulate to a continuance of the class certification after Plaintiff's counsel explained what additional class discovery would be needed before the hearing on certification.  (Wilens Declaration, ¶ 2.)

DATED: November 27, 2017

Respectfully submitted,

By      ___/s/ Jeffrey Wilens_____

JEFFREY WILENS
Attorney for Plaintiff

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................... i

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT OF CASE ................................................................... 1

POINTS AND AUTHORITIES ......................................................... 8

ARGUMENT ................................................................................. 8

   I. THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET. ........................................................................... 8

     A. THE CLASS IS NUMEROUS AND ASCERTAINABLE. ................ 11

     B. COMMON FACTUAL AND LEGAL ISSUES EXIST. ..................... 15

     C. PLAINTIFF'S CLAIMS ARE TYPICAL OF THOSE OF THE CLASSES. ........................................................................ 17

     D. PLAINTIFF AND HIS COUNSEL ARE ADEQUATE CLASS REPRESENTATIVES. ......................................................... 18

     E. COMMON FACTUAL AND LEGAL ISSUES PREDOMINATE. ...................................................................... 19

     F. MAINTENANCE OF A CLASS ACTION WILL RESULT IN SUBSTANTIAL BENEFIT TO THE LITIGANTS AND TO THE COURT AND IS THE SUPERIOR METHOD OF RESOLVING THESE CLAIMS. .................................................. 23

CONCLUSION ............................................................................. 25

PLAINTIFF'S MOTION TO CERTIFY CLASS—17-CV-1724-PA

# TABLE OF AUTHORITIES

## Cases

Akaosugi v. Benihana Nat. Corp. (N.D. Cal. 2012) 282 F.R.D. 241 ............. 11

Amgen Inc. v. Connecticut Retirement Plans and Trust Funds (2013) 568 U.S. 455........................................................................................................10

Armstrong v. Davis (9th Cir. 2001) 275 F.3d 849........................................ 17

Blackie v. Barrack (9th Cir. 1975) 524 F.2d 891..........................................10

CRLA v. Legal Services Co. (9th Cir. 1990) 917 F2d 1171............................ 17

De Leon v. Std. Ins. Co. (C.D.Cal. Jan. 28, 2016, No. 2:15-cv-07419-ODW(JC)) 2016 U.S.Dist.LEXIS 11639 .................................................12

Deitz v. Comcast Corp. (N.D.Cal. July 11, 2007, No. C 06-06352 WHA) 2007 U.S.Dist.LEXIS 53188 ......................................................................19

Edwards v. Nat'l Milk Producers Fed'n (N.D. Cal. Sept. 16, 2014) 2014 U.S. Dist. LEXIS 130621........................................................................14

General Tel. Co. of Southwest v. Falcon (1982) 457 US 147 ....................... 17

Hanlon v. Chrysler Corp. (9th Cir. 1998) 150 F.3d 1011 ................... 15, 17, 18

Hofstetter v. Chase Home Finance, LLC (N.D. Cal., Mar. 31, 2011, C 10-01313 WHA) 2011 WL 1225900...............................................................10

In re Cathode Ray Tube (CRT) Antitrust Litig. (N.D.Cal. 2015) 308 F.R.D. 606 .............................................................................................. 9

In re NJOY Consumer Class Action Litig. (C.D.Cal. 2015) 120 F. Supp.3d 1050 ................................................................................................19, 23

Keegan v. Am. Honda Motor Co., Inc., (C.D. Cal. 2012) 284 F.R.D. 504 ....12

Lerwill v. Inflight Motion Picture, Inc. (9th Cir. 1978) 582 F.2d 507...........18

Leyva v. Medline Industries Inc. (9th Cir. 2013) 716 F.3d 510 .................... 22

Litty v. Merrill Lynch & Co. (C.D.Cal. Aug. 4, 2014, No. CV 14-0425 PA (PJWx)) 2014 U.S.Dist.LEXIS 160447 ................................................. 11

McCrary v. Elations Co., LLC (C.D.Cal. Jan. 13, 2014, No. EDCV 13-00242 JGB (OPx)) 2014 U.S.Dist.LEXIS 8443.................................................12

Rosario v. Livaditis (7th Cir. 1992) 963 F.2d 1013.......................................15

Staton v. Boeing Co. (9th Cir. 2003) 327 F.3d 938.......................................15

Stearns v. Ticketmaster Corp. (9th Cir. 2011) 655 F.3d 1013...................... 22

Valentino v. Carter-Wallace, Inc. (9th Cir. 1996) 97 F.3d 1227 ................... 24

Vaquero v. Ashley Furniture Indus. (C.D.Cal. Apr. 23, 2013, No. CV 12-8590 PA (MANx)) 2013 U.S.Dist.LEXIS 199808 ................................... 22

Vietnam Veterans of America v. C.I.A. (N.D. Cal. 2012) 288 F.R.D. 192 ....14

Wolph v. Acer Am. Corp. (N.D.Cal. 2011) 272 F.R.D. 477 ..........10, 12, 19, 23

Zeisel v. Diamond Foods, Inc. (N.D. Cal. June 7, 2011, No. C 10-01192 JSW) 2011 U.S.Dist.LEXIS 60608 ...........................................................14, 24

Zinser v. Accufix Research Institute, Inc. (9th Cir. 2001) 253 F.3d 1180 ... 23

**Statutes**

18 U.S. Code § 2721................................................................................1, 3

18 U.S. Code § 2722 ...................................................................................1

18 U.S. Code § 2724 ......................................................................... 2, 4, 20

18 U.S. Code § 2725.................................................................................. 2

## **STATEMENT OF CASE**

Sirius XM Radio Inc. ("SiriusXM") provides a subscription-based satellite radio service, which consumers can access through radios contained in their vehicles or purchased for other use.  SiriusXM also offers a radio service over the internet.  SiriusXM offers trial and paid subscriptions to its satellite radio service.  Consumers who purchase or lease either a new or used vehicle typically are provided a trial subscription to the service for a period of time with the opportunity to purchase a paid subscription upon the expiration of the trial subscription.  SiriusXM often contacts consumers in the course of their trial subscriptions, including through the mail, in order to explain SiriusXM's service and the available subscription options.  (Doc. 22, pp. 2-3.)

This class action complaint alleges that Defendant acquires the name and address of persons who purchase cars equipped with SiriusXM radios from **motor vehicle records** and then sends marketing letters to them. (Doc. 1, ¶¶ 16-22.)  This is alleged to be a violation of the Driver Privacy Protection Act (DPPA), 18 U.S. Code § 2721 et. seq.  Title 18 U.S. Code § 2722 provides:

> (a)Procurement for Unlawful Purpose. -
>
> It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted

1

under section 2721(b) of this title.

(b)False Representation. -

It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

"Personal information" means "information that identifies an individual, including an individual's ... name, address (but not the 5-digit zip code), telephone number..."(18 U.S. Code § 2725 (3).)  A "motor vehicle record" means "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." (18 U.S. Code § 2725 (1).)

The permissible purposes are listed in § 2721 (b).  Sending marketing letters or making marketing phone calls is not a permissible use.

The elements of the civil case of action are set forth in 18 U.S. Code § 2724:

(a)Cause of Action. -

A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

(b)Remedies. -The court may award-

(1) actual damages, but not less than liquidated

damages in the amount of $2,500;
(2) punitive damages upon proof of willful or reckless disregard of the law;
(3) reasonable attorneys' fees and other litigation costs reasonably incurred; and
(4) such other preliminary and equitable relief as the court determines to be appropriate.

Thus, to establish liability, the Plaintiff must prove that Defendant 1) knowingly obtained or used personal information; 2) that the personal information came from a motor vehicle record" and 3) that the Defendant did not have a permissible purpose for obtaining or using the information. There is no requirement to prove actual damages as liquidated damages are available.

Plaintiff contends that Defendant obtained his "name," his "address" and his "phone number" from a dealership after he purchased a car; that this personal information was recorded on a driver license issued by the DMV and on a title or registration document issued by the DMV; that the information was extracted from those motor vehicle records and entered into Defendant's computer system; that it was then used to send marketing mailings and make telemarketing calls to him; and finally that there was no permissible purpose for using this information. In brief, Plaintiff contends that using personal information extracted from motor vehicle records to solicit car owners to sign up for paid services such as SiriusXM is not a use

PLAINTIFF'S MOTION TO CERTIFY CLASS—17-CV-1724-PA

permitted under 18 USC § 2721 (b).  Plaintiff seeks statutory damages authorized by 18 USC § 2724 including actual damages, liquidated damages of $2,500, punitive damages, injunctive relief and attorney's fees.

On January 14, 2017, Plaintiff purchased a 2012 Chevy Equinox from Auto Source in Banning (a small used car lot with two locations).  At the time of the purchase, he presented his California Department of Motor Vehicles license and filled out a DMV Reg 262 form, "Vehicle/Vessel Transfer and Reassignment Form." (Andrews Declaration, ¶¶ 3-5; Exhibits 1, 2.)  The dealership got his name and PO Box address from the driver license.  The dealership got his Nicolet street address from Plaintiff, who verbally provided that address and from the DMV form 262 which Plaintiff filled out.  That is why DMV form 262 reflects both the physical and postal office addresses.  The PO Box notated on the form 262 was written in by the dealership because both addresses should be on the DMV record. The dealership got his phone number from the form 262 as well. (Andrews Declaration, ¶ 6.)

After purchasing the vehicle, Plaintiff started driving it, but initially was not aware SiriusXM radio had been activated and did not pay any attention to it.  He then started receiving numerous marketing letters from SiriusXM addressed to his PO Box. The notices such as those attached as

4

Exhibit 3 identified the used car he had purchased and offered a paid subscription to SiriusXM's service for six months for the cost of $30 with the reactivation fee waived.  (Andrews Declaration, ¶ 7; Exhibit 3.)

Defendant has confirmed it mailed 11 marketing solicitations on January 16, 2017; February 20, 2017; March 13 and 23, 2017; April 17 and 18, 2017; May 3 and 24, 2017; June 11, 2017; July 18, 2017; and August 15, 2017.  (Wilens Declaration, ¶ 3; Exhibit 4, Responses to Interrogatories No 1.)  Defendant also has confirmed its telemarketing agents called Plaintiff at his 760-845-XXXX phone number 11 times: on February 2 and 3, 2017; April 6, 2017; May 5, 15, and 18, 2017; and June 8, 9, 13, 19, and 20, 2017. Plaintiff answered only the call that was placed on April 6, 2017.  (Exhibit 4, Responses to Interrogatories No 2.)

Defendant claims that Auto Source provided Plaintiff's name, Nicolet street address and phone number on September 14, 2017 from its "vehicle sold records."  Defendant then updated his address to the PO Box by referencing Postal Service records.  (Exhibit 4, Responses to Interrogatories Nos. 5-10.)

For its part, Auto Source claims it never knowingly agreed to provide that customer information to SiriusXM.  Instead, Auto Source claims it was tricked into permitting SiriusXM to have "backdoor access" into its dealer

management system called "AutoManager."  SiriusXM took the customer information without its knowledge or consent.  (Declarations of Neil Mukerjee, ¶¶ 13-19; Declaration of Glenn Bohannan, ¶¶ 3-10.)

In any event, the name and address information in the dealer management system came from Plaintiff's California driver license.  As the owner of Auto Source explains: "Unless the customer gives us a change of address, the information on the license or identification card is what we use to enter into the dealer management system. If they verbally provide a change of address we use their name from the license and the updated address."  (Declaration of Mukerjee, ¶ 12.)  As indicated above, Plaintiff "updated" his driver license address to include the physical address on Nicolet.  Therefore, the dealer management system accessed by SiriusXM included Plaintiff's name from his driver license and one of his two addresses.  In addition, Defendant acquired Plaintiff's telephone number 760-845-XXXX.  This was not found on his driver license, but it is found on the DMV Vehicle Transfer Form 262 (Exhibit 2).

On a broader scale, Defendant has acknowledged that it learns vehicles with SiriusXM radios have been sold to customers from the vehicle dealers in similar fashion to how it learned about Plaintiff's car purchase.  It also acquires those customers' names, addresses and phone numbers in a

similar manner.    (Exhibit 4, Responses to Interrogatories Nos. 12-14; Declaration of Gail Berger, ¶¶ 2-5 (Submitted for Filing Under Seal, Doc. 32-1); Declaration of John Carpenter, ¶¶ 6-9 (Submitted for Filing Under Seal, Doc. 32-1.)  Along similar lines, in the Joint Early Report, Defendant stated that it does not acquire personal information from motor vehicle records. Rather, SiriusXM claims that it receives from the vehicle dealerships the names and addresses of consumers who have purchased or leased vehicles and who will be receiving SiriusXM's trial subscriber service. SiriusXM routinely obtains updated address information for subscribers (including trial subscribers) from the United States Postal Service's National Change of Address database and other legitimate sources and not from state department of motor vehicle records. (Doc. 22, pp. 3-4.)

While Defendant refused to state how many class members were sent similar marketing letters or to provide their contact information, it did confirm the number meets the requirements to establish numerosity for purposes of Rule 23(a)(1) of the Federal Rules of Civil Procedure.   (Exhibit 4, Responses to Interrogatories, No. 11.)

Given that Defendant only produced the "confidential" Berger and Carpenter declarations on November 10th and served the non-confidential written interrogatory responses on November 22nd, Plaintiff is obviously

7

being rushed to file this motion.  So, there are additional areas that need to be explored before the Court rules (see concurrently filed Ex Parte Application to Continue Class Certification).

## POINTS AND AUTHORITIES

## ARGUMENT

**I.  THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET.**

Plaintiff seeks to certify a class comprised of:

> All United States residents who, within the past four years, were sent a marketing letter from Defendant or who received marketing phone call from Defendant using "personal information" obtained by Defendant from car dealerships that had recently sold the car in question to the customer.

This definition deviates slightly from that presented in the complaint by adding the language about phone calls, by adding "Defendant" to clarify who did what, by adding "marketing" to clarify the type of letter sent or phone call made, and by narrowing the class to consumers who had recently bought a car from a dealership that provided the information to SiriusXM.  Also, previously the class definition referred to any person who was sent a letter from Defendant using personal information found in motor vehicle records within the meaning of 18 USC § 2725 during the past four years.  That extra language is no longer deemed necessary in light of

the partial discovery provided to date.

The deadline to amend the complaint is February 5, 2018 so Plaintiff should be given free rein to adjust the class definition, especially considering the incomplete status of discovery. The revisions do not change the legal theory or claims. While it is possible that SiriusXM called some car purchasers but never mailed any letters to them, it is not likely. Even if this change increases the number of violations, it probably does not do so in any material way.

There is a split of authority in the Ninth Circuit whether a district court is bound to the class definitions provided in the complaint, absent a motion to amend. (See, e.g., In re Cathode Ray Tube (CRT) Antitrust Litig. (N.D.Cal. 2015) 308 F.R.D. 606, 619 (certifying a class despite a deviation from the pled definition).) Therefore, Plaintiff will file a formal motion to amend if this Court so requires.

To certify a class, Plaintiff must present evidence that all of the requirements of Rule 23 (a) have been met and that the requirements of at least one of the subdivisions of Rule 23 (b) have been met. Plaintiff seeks to certify this matter under Rule 23 (b) (3). Under Rule 23 (a), the requirements are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23 (b) (3), Plaintiff must also show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As discussed in detail below, all of these requirements have been met.

In <u>Amgen</u> <u>Inc</u>. v. <u>Connecticut</u> <u>Retirement</u> <u>Plans</u> <u>and</u> <u>Trust</u> <u>Funds</u> (2013) 568 U.S. 455, 466, 133 S.Ct. 1184, 1194-95, the United States Supreme Court reaffirmed that the question of certification is essentially a procedural one that does not ask whether an action is legally or factually meritorious.  "Merits questions may be considered to the extent--but only to the extent--that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." (<u>Id</u>.) Thus, "neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class. . . ." (<u>Blackie</u> v. <u>Barrack</u> (9th Cir. 1975) 524 F.2d 891, 901.) Moreover, "the allegations in the complaint are accepted as true so long as

those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied." (Hofstetter v. Chase Home Finance, LLC (N.D. Cal., Mar. 31, 2011, C 10-01313 WHA) 2011 WL 1225900, *6 (citations omitted); Wolph v. Acer Am. Corp. (N.D. Cal. 2011) 272 F.R.D. 477, 481.)

### A.  THE CLASS IS NUMEROUS AND ASCERTAINABLE.

Rule 23 (a) (1) requires a showing that "the class is so numerous that joinder of all members is impracticable."  The defined class would number in the many thousands, maybe over 100,000.  The numerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least forty members." (Litty v. Merrill Lynch & Co. (C.D.Cal. Aug. 4, 2014, No. CV 14-0425 PA (PJWx)) 2014 U.S.Dist.LEXIS 160447, at *6; Akaosugi v. Benihana Nat. Corp. (N.D. Cal. 2012) 282 F.R.D. 241, 253.) Additionally, it is not necessary to state the exact number of class members when the plaintiff's allegations plainly suffice to meet the numerosity requirement. (Litty, supra, at p. *6.)  The numerosity requirement here is not contested. While Defendant has declined to state how many class members received marketing mailers, it has stipulated in the discovery responses that the number of new owners of vehicles with SiriusXM radios who were sent

PLAINTIFF'S MOTION TO CERTIFY CLASS—17-CV-1724-PA

similar marketing letters is sufficiently large to meet the numerosity requirement. Obviously, the number of persons who received phone calls would be at least that large if not larger.

Defendant may argue that while the proposed class is numerous in size, it is not ascertainable. "As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." (De Leon v. Std. Ins. Co. (C.D.Cal. Jan. 28, 2016, No. 2:15-cv-07419-ODW(JC)) 2016 U.S.Dist.LEXIS 11639, at *10; Wolph, supra, 272 F.R.D. at p. 489.) A class is ascertainable if it is "administratively feasible for the court to determine whether a particular individual is a member" using objective criteria. (McCrary v. Elations Co., LLC (C.D.Cal. Jan. 13, 2014, No. EDCV 13-00242 JGB (OPx)) 2014 U.S.Dist.LEXIS 8443, at *20-22; Keegan v. Am. Honda Motor Co., Inc., (C.D. Cal. 2012) 284 F.R.D. 504, 521 (citation omitted); Wolph, supra, 272 F.R.D. at p. 489.)

It is difficult to see how Defendant can persuasively argue the class is not ascertainable since its own records reflect the names, addresses and phone numbers of the persons to whom mailers were sent or phone calls made. Defendant may argue that while the identity of the persons who received mailers and phone calls is ascertainable, the class is still not

12

ascertainable because Defendant used different methods to identify different class members.  The class members purchased their vehicles from hundreds or maybe thousands of different vehicle dealerships.

However, as is clear from the confidential declarations of Gail Berger and John Carpenter, all of the dealerships (presumably through their own dealer management software) provided the same information about new or used car purchasers, including name, address, and phone number. Whether Defendant then used that information directly to send the mailers and make phone calls, or whether it had to "update" the source data before making the marketing efforts is irrelevant.  The point is the source data provided by the dealerships is the same.  Since Defendant can readily identify its dealers, the source data can also be tracked back to them as the case is prepared for trial.

Defendant may also argue that the class definition fails because it does not specify that the personal information at issue must have come from motor vehicle records and therefore the class is not overbroad or not precise.  However, all of the evidence obtained to date shows the source data acquired from dealerships by Defendant comes from the driver license and/or the Vehicle Transfer form alluded to earlier.  Currently, Defendant has not yet identified any of the other dealerships from whom it gets

customer information, so Plaintiff has not been given sufficient time to conduct discovery, such as by taking statements from or conducting depositions of the managers of some of those dealerships, before being required to file this motion.  This deficiency is one of the reasons cited as justification for a continuance in the concurrently filed Application to Continue the certification hearing.  At this point, it can be inferred that the other dealerships obtained the source data from the same type of motor vehicle records, as did Auto Source.  **Either that inference will suffice for purposes or class certification or the Court should allow more time for discovery**.

The proposed class definition is objective not subjective or imprecise and that is all that is required at this point.  "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." (Vietnam Veterans of America v. C.I.A. (N.D. Cal. 2012) 288 F.R.D. 192, 211 (citation omitted).)  For example, in Zeisel v. Diamond Foods, Inc. (N.D. Cal. June 7, 2011, No. C 10-01192 JSW) 2011 U.S.Dist.LEXIS 60608, at *20-21, the defendant argued a class of walnut purchasers was not administratively feasible because it did not track purchasers and consumers would be

unlikely to remember which particular nuts they bought. The court rejected that argument. It held that class members would be able to <u>identify themselves</u> as members of the proposed class by referring to the objective characteristics described in the class definition. (<u>Id</u>.; <u>Edwards</u> v. <u>Nat'l</u> <u>Milk</u> <u>Producers</u> <u>Fed'n</u> (N.D. Cal. Sept. 16, 2014) 2014 U.S. Dist. LEXIS 130621, *9-10 (potential class members could identify themselves from information provided about dates of transactions and brand of product).) So it is in the instant case as well. Class members would know if the dealer that sold the car used information from their driver license to create the transaction record or if they signed a Vehicle Transfer form that contained their personal information.

There is an ample showing the numerosity and ascertainability requirements have been met.

### B.    COMMON FACTUAL AND LEGAL ISSUES EXIST.

A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact common to the class." "The fact that there is some factual variation among the class grievances will not defeat a class action. . .A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." (<u>Rosario</u> v. <u>Livaditis</u> (7th Cir. 1992) 963 F.2d 1013, 1017-1018.) The common question requirement

can be satisfied by a shared legal issue with divergent factual predicates or by a common core of salient facts with disparate legal remedies. (Staton v. Boeing Co. (9th Cir. 2003) 327 F.3d 938, 953; Hanlon v. Chrysler Corp. (9th Cir. 1998) 150 F.3d 1011, 1019.)

Both shared legal issues and a common core of salient facts are present here. The shared legal issues are 1) whether a driver license, motor vehicles issued identification card and/or DMV vehicle transfer form qualify as "motor vehicles records" within the meaning of the DPPA; 2) whether the DPPA applies even when the information used by a defendant originated from a motor vehicle record but was not provided directly by the motor vehicles department (i.e., does the DPPA apply if one party obtains information from a motor vehicle record and then gives or sells it to a second party who then uses it for a prohibited purposes); and (3) whether Defendant had a permissible purpose to use the information from motor vehicle records. All of these questions of law can be resolved on a classwide basis.

The common core of salient facts include: 1) each class member received a phone call or letter from Defendant marketing its services; 2) Defendant obtained the name, address and phone number of each class member from a vehicle dealership; 3) the dealerships obtained the name,

address and phone number from a motor vehicle record and then provided same to Defendant; 4) Defendant knew that the personal information originated off a motor vehicle record like the driver license or vehicle transfer form; and 5) the letters and phone calls contained similar information showing the purpose of the communication was to offer Defendant's commercial services.

The commonality requirement has been met.

### C. PLAINTIFF'S CLAIMS ARE TYPICAL OF THOSE OF THE CLASSES.

The claims of the class representative must be typical of but need not be identical to the claims of the class. The class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." (General Tel. Co. of Southwest v. Falcon (1982) 457 US 147, 156; CRLA v. Legal Services Co. (9th Cir. 1990) 917 F2d 1171, 1175.) "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members, they need not be substantially identical." (Hanlon, supra, 150 F.3d at 1020.) Typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Armstrong v. Davis (9th Cir. 2001) 275 F.3d 849, 868.)  Plaintiff received the same type of marketing letters and phone calls as the other class

member after Plaintiff's personal information obtained from motor vehicle records was obtained by and used by Defendant.

Typicality has been demonstrated.

### D. PLAINTIFF AND HIS COUNSEL ARE ADEQUATE CLASS REPRESENTATIVES.

The requirement of fair representation involves two factors. "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." (Lerwill v. Inflight Motion Picture, Inc. (9th Cir. 1978) 582 F.2d 507, 512.) The inquiry whether the class representative will adequately represent the class focuses on two questions: 1) whether the class representative and its counsel have any conflicts of interest with the class members, and 2) whether the class representative and its counsel will vigorously prosecute the action for the class. (Hanlon, supra, 150 F.3d at p. 1020.)

Plaintiff's counsel are well qualified based upon their academic credentials and many years of class action litigation experience. Numerous courts, including the Central District, have approved them to serve as class counsel. (Wilens Declaration, ¶¶ 4-27; Spencer Declaration, ¶¶ 2-31.) The proposed class representative has no interests antagonistic to the other

class members and desire to serve their interests. He has actively protected the interests of the classes by hiring legal counsel to sue and is committed to litigating this case for the classes. (Andrews Declaration, ¶ 8.)

The adequacy requirements have been met.

### E. COMMON FACTUAL AND LEGAL ISSUES PREDOMINATE.

Under Rule 23 (b) (3), a plaintiff must demonstrate that questions of law or fact common to the class members "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." In conducting this inquiry, the court should "identify the substantive issues raised by each cause of action and then inquire into the proof relevant to each issue." "[T]he Court must identify the substantive issues raised by the cause of action and then inquire into the proof relevant to each issue." (Deitz v. Comcast Corp. (N.D.Cal. July 11, 2007, No. C 06-06352 WHA) 2007 U.S.Dist.LEXIS 53188, at *18.) However, in considering the question of predominance, the court does not decide the merits of the parties' claims or defenses or decide whether the plaintiff is likely to prevail on the merits. (In re NJOY Consumer Class Action Litig. (C.D.Cal. 2015) 120 F. Supp.3d 1050, 1116.) Instead, the plaintiff need only show that "there are plausible classwide methods of proof available to prove his

claims.  (Id.; Wolph v. Acer Am. Corp., supra, 272 F.R.D. at p. 487 (citation omitted).)

Plaintiff can prove liability on a classwide basis with no significant individualized issues.   Common evidence will show that Defendant contracted with car dealerships to acquire customer's personal information which the dealerships obtained in the process of selling a new or used; that the information came from the driver license, state identification card or motor vehicle department forms; that Defendant knew the personal information originated from one or more of the foregoing motor vehicle records; and that Defendant used the information to make marketing communications.

Defendant may raise a number of defenses, all of which are subject to classwide determination as they do not turn on numerous (or any) individualized facts.  For example, Defendant may argue (as it already has) that it did not acquire any information directly from state motor vehicle departments and that DPPA liability is limited to the situation where a defendant acquires the personal information directly from the DMV.  That argument presents a pure question of law that does not turn on individual facts and it applies equally to Plaintiff and the class.

Alternatively, and perhaps a little more expansively, Defendant may

concede that liability could also be found when a company obtains physical possession of a motor vehicle record (like a driver license or vehicle transfer form) and then copies information off the form into its own computer system for its subsequent use.  However, Defendant will argue it cannot be liable because it never actually acquired possession of anyone's driver license, for example.  Again, this defense presents a common legal question (does liability under the DPPA require that the defendant acquire physical possession of a motor vehicle record or just the information from it) that does not turn on individual facts and it applies equally to Plaintiff and the class.

Plaintiff, of course, rejects both proposed defenses.   There is nothing in the DPPA generally or 18 USC § 2724 specifically that requires a plaintiff prove a defendant obtained information directly from the DMV or even that it have obtained a copy of the motor vehicle record itself.  Instead, liability turns on whether the defendant knew it was obtaining personal information that **came from a motor vehicle record**.  The court will decide whether Plaintiff or Defendant is correct on these points.

Now, Defendant could also argue it did not know the "name," "address" or "phone number" it obtained from the car dealership came from a motor vehicle record.  This raises a factual defense of lack of

21

knowledge, but that too can be resolved on a classwide basis by the jury. Defendant is not likely to argue that it knew it got certain personal information about some class members from motor vehicle records but did not know it got personal information about other class members from motor vehicle records. So, lack of knowledge will be an "all or nothing" defense that is not based on the individual circumstances of each class member. Rather, it will be based on Defendant's subjective beliefs and/or what knowledge can be charged to Defendant.

Plaintiff expects to prevail before the jury on the question of knowledge. All of the companies supplying the personal information about class members to Defendant were car dealerships that had just sold a new or used car to the class member. It is a matter of common knowledge that to buy a car in the United States a customer typically has to produce some sort of motor vehicle issued state identification card and that the official sales transaction information is recorded off of DMV issued forms such as vehicle transfer form 262. This will be a factual issue for the jury, which either will believe Defendant's testimony denying knowledge (assuming such testimony is forthcoming) or it will not.

Finally, Defendant may argue individual damages may vary from class member to class member. However, the amount of damages is

invariably an individual question that does not defeat class certification. Stearns v. Ticketmaster Corp. (9th Cir. 2011) 655 F.3d 1013, 1026; Leyva v. Medline Industries Inc. (9th Cir. 2013) 716 F.3d 510, 514; Vaquero v. Ashley Furniture Indus. (C.D.Cal. Apr. 23, 2013, No. CV 12-8590 PA (MANx)) 2013 U.S.Dist.LEXIS 199808, at *1.) In any event, the DPPA provides for statutory damages of $2,500, so individual damages will not be an issue. The letters and calls are documented by Defendant's business records and it should be a straightforward exercise of applying the statutory damages to the number of letters and calls sent.

Therefore, common questions predominate over individual questions.

### F.   MAINTENANCE OF A CLASS ACTION WILL RESULT IN SUBSTANTIAL BENEFIT TO THE LITIGANTS AND TO THE COURT AND IS THE SUPERIOR METHOD OF RESOLVING THESE CLAIMS.

In deciding whether a class action would be superior to individual lawsuits, the court will usually consider four factors set forth in Rule 23 (b) (3).  The matters pertinent to these findings include: (A) the interest of each class member in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (C) the desirability of concentrating the litigation of the claims in a particular forum; and (D)

PLAINTIFF'S MOTION TO CERTIFY CLASS—17-CV-1724-PA

the difficulties likely to be encountered in the management of a class action. (In re NJOY Consumer Class Action Litig., supra, 120 F. Supp.3d at p. 1122; Wolph v. Acer Am. Corp., supra, 272 F.R.D. at p. 488.)

All of these factors militate in favor of finding a class action to be superior in the instant case. Regarding points (A) and (C), it would not be very practical to bring individual lawsuits to challenge the use of the customer's personal information.  Many thousands of individual lawsuits would be required, and typical purchasers would not even know that SiriusXM had acquired their personal information from the dealership. Moreover, individual damages would be modest because liquidated damages are fixed at $2,500.  "Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." (Zinser v. Accufix Research Institute, Inc., supra, 253 F.3d at p. 1190; cf., Litty, supra, 2014 U.S.Dist.LEXIS 160447, at *17 (court found individual actions would be superior since individual damages were more than $100,000).)

Regarding point (B), there are no other lawsuits pending.  Finally, regarding point (D), no significant management difficulties are foreseen. Legal rulings will probably determine whether Defendant violated the DPPA by using information from motor vehicle records.  The jury will

PLAINTIFF'S MOTION TO CERTIFY CLASS—17-CV-1724-PA

resolve any factual defense based on lack of knowledge.  This plan is much more manageable than requiring thousands of lawsuits for $2,500 each. Manageability concerns must be weighed against the alternatives and will rarely, by themselves, be sufficient to deny certification. (Zeisel v. Diamond Foods, Inc., supra, 2011 U.S. Dist. LEXIS 60608, *36-37, 2011 WL 2221113.)  Notably, the class-action method is considered to be superior if "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc. (9th Cir. 1996) 97 F.3d 1227, 1234 (citation omitted).

Therefore, a class action is a superior method of adjudicating the class members' claims.

### CONCLUSION

For the above stated reasons, Plaintiff respectfully urges the court to grant the motion to certify the class.  As indicated in the concurrently filed Application to Continue, Plaintiff may need additional time to conduct discovery before the hearing.

DATED: November 27, 2017

Respectfully submitted,

By    ___/s/ Jeffrey Wilens_____

JEFFREY WILENS
Attorney for Plaintiff