John A. Vogt (State Bar No. 198677)
Ann T. Rossum (State Bar No. 281236)
javogt@JonesDay.com
atrossum@JonesDay.com
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA 92612.4408
Telephone: +1.949.851.3939
Facsimile: +1.949.553.7539

Attorneys for Defendant
SIRIUS XM RADIO INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

JAMES E. ANDREWS on behalf of himself and all persons similarly situated,

Plaintiff,

v.

SIRIUS XM RADIO INC., and Does 1 through 100 inclusive,

Defendants.

Case No. 5:17-CV-01724-PA-AFM

Assigned for all purposes to The Honorable Percy Anderson

**SIRIUS XM RADIO INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Date: January 8, 2018
Time: 1:30 pm
Place: Courtroom 9A
Judge: Hon. Percy Anderson

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. FACTUAL BACKGROUND .......... 2

III. STANDARD OF REVIEW .......... 4

IV. ARGUMENT .......... 5

A. The DPPA Only Protects Information Obtained From or Disclosed By a State Department of Motor Vehicles .......... 5

B. Sirius XM Obtained Plaintiff's Information From A Vehicle Dealer and U.S. Postal Service Records, Not From A State Department of Motor Vehicles .......... 9

C. No Further Discovery Could Provide Plaintiff with Evidence to Support His Claim .......... 9

V. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767 (9th Cir. 2003) .......... 9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......... 5

*Cummings v. Starbucks Corp.*, No. CV 12-06345-MWF FFMX, 2013 WL 2096435 (C.D. Cal. May 14, 2013) .......... 9

*Family Home & Fin. Ctr., Inc. v. Red. Home Loan Mortg. Corp.*, 525 F.3d 822 (9th Cir. 2008) .......... 10

*Figueroa v. Taylor*, No. 06 CIV. 3676 PACKNF, 2006 WL 3022966 (S.D.N.Y. Oct. 23, 2006) .......... 7, 8

*Fontanez v. Skepple*, 563 F. App'x 847 (2d Cir. 2014) .......... 7, 8

*Hurst v. State Farm Mut. Auto. Ins. Co.*, No. 10-1001-GMS, 2012 WL 426018 (D. Del. Feb. 9, 2012) .......... 8

*Lancaster v. City of Pleasanton*, No. C 12-05267 WHA, 2013 WL 5182949 (N.D. Cal. Sept. 13, 2013) .......... 7

*Maracich v. Spears*, 133 S. Ct. 2191 (2013) .......... 6, 7

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......... 4

*Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144 (9th Cir. 2012) .......... 4

*O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933 (N.D. Ill. 2002) .......... 7, 8

*Ocasio v. Riverbay Corp.*, No. 06 CIV. 6455 PAC KNF, 2007 WL 1771770 (S.D.N.Y. June 19, 2007) .......... 8

*Reno v. Condon*, 528 U.S. 141 (2000) .......... 6, 7

*Siegler v. Best Buy Co. of Minnesota, Inc.*, 519 F. App'x 604 (11th Cir. 2013) ............ 6, 8, 9

*Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216 (9th Cir. 1995) ............ 5

*Twentieth Century Fox Television v. Empire Distribution Inc.*, No. CV 15-2158 PA, 2016 WL 3092156 (C.D. Cal. Mar. 28, 2016) ............ 9

*Whitaker v. Appriss, Inc.*, No. 3:13-CV-826 RLM-CAN, 2017 WL 3065174 (N.D. Ind. July 18, 2017) ............ 6, 7

*Wright v. Schock*, 742 F.2d 541 (9th Cir. 1984) ............ 1

**STATUTES**

18 U.S.C. § 2721 et seq. ............ passim

18 U.S.C. § 2721(1) ............ 2

18 U.S.C. § 2724(a) ............ 6

18 U.S.C. § 2725 ............ 2

18 U.S.C. § 2725(1) ............ 6

**RULES**

Fed. R. Civ. P. 56(a) ............ 2

Fed. R. Civ. P. 56(d) ............ 9

# I. INTRODUCTION

This case is the quintessential candidate for following the Ninth Circuit's sage approach in *Wright v. Schock*: "consider a Rule 56 motion first when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation." 742 F.2d 541, 544 (9th Cir. 1984). Plaintiff's understanding of the facts is wrong: contrary to what Plaintiff alleges, defendant Sirius XM Radio Inc. ("Sirius XM") did not obtain any information about Plaintiff from a state department of motor vehicles. Since Plaintiff's entire case is premised on his incorrect and unsupported guess, Plaintiff cannot succeed.

Sirius XM sought at an early stage—prior to extensive discovery into, and briefing on, class issues—to explain those facts to Plaintiff's counsel in an effort to convince Plaintiff to dismiss his Complaint, thus preserving the Court's and parties' resources. Sirius XM explained to Plaintiff's counsel that Sirius XM contracts with vehicle dealerships to provide to Sirius XM the names and addresses of consumers who purchase pre-owned cars from those dealerships. Sirius XM activates trial subscriptions to its satellite radio service in eligible vehicles and then communicates with applicable purchasers to explain and market the service to them. That is precisely what happened here. Sirius XM obtained Plaintiff's name, address, and telephone number from a dealership called Auto Source in Banning, California and supplemented that information (including with Plaintiff's P.O. Box address) using the U.S. Postal Service's National Change of Address ("NCOA") database. It did not obtain Plaintiff's information from any state department of motor vehicles. Not only did Sirius XM explain these facts to Plaintiff's counsel, but Sirius XM even supplied signed declarations and related documents to Plaintiff's counsel corroborating the facts. Sirius XM has also offered to permit Plaintiff's counsel to conduct reasonable due diligence to satisfy himself regarding those facts.

The indisputable facts confirm that Sirius XM did not access any "motor vehicle records" in violation of the Driver Privacy Protection Act ("DPPA"), 18 U.S.C. 2721, *et seq*., the cornerstone of Plaintiff's case. The DPPA limits the extent to which *a state department of motor vehicles* can disclose certain personal information, and it also prevents a private party from obtaining such information from a state department of motor vehicles for purposes not permitted by the statute. 18 U.S.C. §§ 2721(1), 2725. The DPPA does *not* limit the use of a consumer's personal information that a private party has obtained from a source *other than* a state department of motor vehicles.

Sirius XM now moves for summary judgment on Plaintiff's individual claim. Doing so will conserve the Court's resources and save the parties unnecessary costs in litigating a meritless claim. Sirius XM remains willing to allow Plaintiff to test the material facts through reasonable due diligence. Those facts, though, will not change, and it is appropriate to consider, now, the flaws in Plaintiff's claim.

## II. FACTUAL BACKGROUND

Sirius XM operates a satellite digital radio service. Sirius XM offers subscriptions to owners and lessees of new and pre-owned, or used, vehicles. (SF ¶ 1.)[1] James Andrews, the plaintiff, purchased a pre-owned 2012 Chevy Equinox from Auto Source, a vehicle dealer in Banning, California on January 15, 2017. (*Id.* at ¶ 2.) Plaintiff disclosed his residence address and cellular telephone to the dealer in the course of purchasing the vehicle. (*Id.* at ¶ 3.) The dealer, in turn, provided that information to Sirius XM to activate a trial subscription to its satellite radio service in the vehicle purchased by Plaintiff and to communicate with Plaintiff regarding the service. (*Id.* at ¶ 10.)

Sirius XM sent letters to Plaintiff between the date of his vehicle purchase and August 2017. (*Id.* at ¶ 4.) The letters were sent to Plaintiff at his P.O. Box

[1] Statement of Undisputed Facts and Conclusions of Law in Support of Motion for Summary Judgment ("SF").

address, not his residence address. (*Id*. at ¶ 5.) A telemarketing vendor also telephoned Plaintiff on behalf of Sirius XM on at least one occasion. (*Id.* at ¶ 6.)

Plaintiff alleges that he "is informed and believes and thereupon alleges" that Sirius XM "routinely acquires motor vehicle records that identify the new [vehicle] owner and his or her address and phone numbers," and that Sirius XM thereafter mails communications to new owners from those motor vehicle records. (Compl. ¶ 19.) As to himself, Plaintiff alleges that Sirius XM "most likely" obtained his name, address, and telephone number from "registration documents submitted to the DMV after he purchased his car." (*Id.* ¶ 21.) Following the filing of the complaint, Sirius XM's counsel explained to Plaintiff's counsel that Sirius XM did not obtain Plaintiff's name, address, or phone number from a state department of motor vehicles. Rather, as Sirius XM explained in sworn declarations and accompanying documentary material, Sirius XM obtained Plaintiff's name, address, and telephone number from a combination of the dealer from which Plaintiff purchased the vehicle and from the U.S. Postal Service's NCOA database. These declarations and accompanying materials explained the following:

- Sirius XM has agreements with automotive dealerships across the country pursuant to which dealerships provide the names, addresses, and phone numbers of consumers who purchase or lease pre-owned vehicles. (SF ¶ 7.) Auto Source in Banning is one such dealer and had an agreement with Sirius XM to provide such information to Sirius XM. (*Id*. at ¶¶ 8-9.)
- On January 14, 2017, when Plaintiff purchased the Chevrolet Equinox, Auto Source sent an electronic record of that sale to Sirius XM. (*Id*. at ¶ 10.) Auto Source's electronic record contained Plaintiff's residence

address (324 W. Nicolet St., Banning, California 92220) and telephone number. (*Id*. at ¶¶ 11-12.)[2]

- Sirius XM also has an agreement with Epsilon Data Management, LLC ("Epsilon"), pursuant to which Epsilon provides information regarding updated addresses as requested by Sirius XM. (*Id*. at ¶ 13.) Epsilon did so for Plaintiff's address, providing Sirius XM with a record from the U.S. Postal Service's NCOA database reflecting Plaintiff's updated address—P.O. Box 1075, Banning, California 92220. (*Id*. at ¶¶ 13-14.) Sirius XM then mailed letters offering a subscription to its satellite radio service to Plaintiff at the P.O. Box address. (*Id*. at ¶ 5.)

Sirius XM provided these facts to Plaintiff's counsel on November 10, as Sirius XM represented to the Court it would do. (ECF No. 29.) Sirius XM also advised Plaintiff's counsel that Sirius XM would provide Plaintiff's counsel with reasonable opportunity to conduct due diligence to confirm these facts. (Declaration of John Vogt ¶ 2.)

## III. STANDARD OF REVIEW

"[A] court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must "make a showing sufficient to establish

---

[2] Sirius XM's records confirm that Auto Source enrolled in Sirius XM's program on October 7, 2015. (SF ¶ 9.) Plaintiff's counsel either visited or telephoned Auto Source after receiving information from Sirius XM's counsel regarding Auto Source's participation in Sirius XM's program. Following that contact from Plaintiff's counsel, Auto Source advised Sirius XM that it no longer wanted to participate in Sirius XM's program. (*See* Ex. 5 to Vogt Declaration.) That immaterial fact does not change the source of the information received by Sirius XM regarding Plaintiff—i.e., from the dealership.

the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "All reasonable inferences must be drawn in the nonmoving party's favor, but such 'inferences are limited to those upon which a reasonable jury might return a verdict.'" *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995) (citation omitted).

## IV. ARGUMENT

The DPPA limits the use or disclosure of personal information that is obtained from a state department of motor vehicles. It is an essential element of Plaintiff's claim to show the sourcing of his name, address and telephone records from a state department of vehicles, and *Celotex* requires the granting of summary judgment in the absence of any ability to prove that element of Plaintiff's DPPA claim.[3] Contrary to Plaintiff's mistaken allegations, Sirius XM did not obtain Plaintiff's information from a state department of motor vehicles, but from two sources: the auto dealer from which Plaintiff bought his used car (which obtained that information from Plaintiff) and from the U.S. Postal Service's NCOA database. No discovery will change those stubborn facts. Sirius XM therefore is entitled to judgment as a matter of law.

### A. The DPPA Only Protects Information Obtained From or Disclosed By a State Department of Motor Vehicles.

Plaintiff cannot prove an essential element of his DPPA claim—i.e., his allegations that Sirius XM obtained his personal information directly or indirectly from a state department of motor vehicles. (Compl. ¶¶ 19, 21.)

The U.S. Supreme Court has explained that the DPPA "restricts the *States'* ability to disclose a driver's personal information without the driver's consent" and "regulates the resale and redisclosure of drivers' personal information by private

[3] Plaintiff's claim is deficient for other reasons as well, but Sirius XM moves for summary judgment at an early stage only on this essential element.

persons who have obtained that information *from a state DMV*." *Reno v. Condon*, 528 U.S. 141, 146 (2000) (emphasis added). Congress's goal in enacting the DPPA was to prevent "stalkers and criminals from utilizing motor vehicle records to acquire information about their victims" and to stop "the States' common practice of selling personal information . . . ." *Maracich v. Spears*, 133 S. Ct. 2191, 2198 (2013).

The DPPA accomplishes these goals by prohibiting "only the disclosure or redisclosure of information *originating* from state department of motor vehicles . . . records," allowing such disclosure only in certain enumerated circumstances. *Siegler v. Best Buy Co. of Minnesota, Inc.*, 519 F. App'x 604, 605 (11th Cir. 2013) (emph. in original); *Maracich*, 133 S. Ct. at 2198, 2208 (the statute limits "a state DMV" from making certain disclosures). The statute then provides a private cause of action against "[a] person who knowingly obtains, discloses or uses personal information, *from a motor vehicle record*, for a purpose not permitted" by the DPPA. 18 U.S.C. § 2724(a) (emphasis added); *Maracich*, 133 S. Ct. at 2208 (a person that has "acquired [information] *from* a state DMV" violates this statute by using that information other than for one of the statutorily enumerated grounds for permissible use) (emph. added). The DPPA defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1).

To have improperly accessed a "motor vehicle record," a private party must have sourced information in that record from a state department of motor vehicles itself. *Whitaker v. Appriss, Inc.*, No. 3:13-CV-826 RLM-CAN, 2017 WL 3065174 (N.D. Ind. July 18, 2017) (not a DPPA violation where defendant obtained personal information from accident records prepared based on information obtained from consumer's driver's license that consumer gave to police officers at accident scene). In granting summary judgment, the *Whitaker* court explained: "[w]hen the holder of

a driver's license hands over her personal information to an entity other than a DMV, . . . the DPPA doesn't protect it." *Id.* at *7. *See also Reno*, 528 U.S. at 146; *Maracich*, 133 S. Ct. at 2208.

The statute is not violated if the consumer's information came from a source *other than* a state department of motor vehicles. *Whitaker,* 2017 WL 3065174 at *5 ("the only issue then is whether the 'original source' of the information is the DMV or the [consumers]"); *Figueroa v. Taylor*, No. 06 CIV. 3676 PACKNF, 2006 WL 3022966, at *1 (S.D.N.Y. Oct. 23, 2006) (dismissing complaint, holding "the DPPA does not apply when a defendant obtains another person's 'personal information' from that person, rather than from a state motor vehicle agency."). The Northern District of California, for example, dismissed a plaintiff's DPPA complaint for failing to specify what information defendant obtained from the California Department of Vehicles as opposed to other government databases, holding "information obtained from databases other than the DMV is not protected information under the DPPA." *Lancaster v. City of Pleasanton*, No. C 12-05267 WHA, 2013 WL 5182949, at *4 (N.D. Cal. Sept. 13, 2013). Similarly, the Second Circuit held that a corrections officer did not violate the DPPA by contacting a woman who had visited a state jail when he used contact information that the facility recorded from a driver's license the woman used to access the facility: "the statute was intended to bar the State from disclosing personal information obtained *from DMV records* without the individual's consent." *Fontanez v. Skepple*, 563 F. App'x 847, 849 (2d Cir. 2014) (emphasis added).

The DPPA's singular focus is on the source of the identifying information. A private party does not violate the DPPA by using information that the party received from a source other than a state department of motor vehicles, even if that information might also appear on a record maintained by a state department of motor vehicles. *O'Brien v. Quad Six, Inc.*, 219 F. Supp. 2d 933, 935 (N.D. Ill. 2002). In *O'Brien*, the court dismissed a complaint alleging that a nightclub

violated the DPPA by marketing to a consumer based on the driver's license he used to gain access to the club: "Congress enacted the DPPA to regulate information collected from citizens by the state, not transactions between private businesses and their customers." *Id.* at 934. In the latter situation, consumers have no recourse under the DPPA, even if the private business with which the consumer dealt (in this case, the dealer from which Plaintiff purchased his vehicle) gave that information to another private party, here, Sirius XM. *See also Figueroa*, 2006 WL 3022966, at *4 (source of the information was "not a state motor vehicle agency"); *Hurst v. State Farm Mut. Auto. Ins. Co.*, No. 10-1001-GMS, 2012 WL 426018, at *10 (D. Del. Feb. 9, 2012) (dismissing complaint where the plaintiff does not allege that "any defendants performed a search with any state DMV or . . . caused a DMV search to be made by a third party").

Courts across the country have reached the same conclusion. *See Fontanez*, 563 F. App'x at 849 ("[w]here the personal information at issue is not obtained from a state DMV, no DPPA cause of action can be found"); *Siegler*, 519 F. App'x at 604-05 (a retailer did not violate the DPPA by retaining information scanned from a customer's driver's license; finding "the fact that [Best Buy] obtained its information from [Siegler], rather than Florida's Department of Highway Safety and Motor Vehicles, place[d] [Best Buy's] conduct outside the scope [of] the DPPA's protections."); *Hurst*, 2012 WL 426018, at *10 ("Where, as here, a defendant does not obtain a plaintiff's 'personal information' from a state motor vehicle agency, but instead, obtains that information directly from the plaintiff, any subsequent disclosure of that 'personal information' is not a DPPA violation."); *O'Brien*, 219 F. Supp. 2d at 934 ("Reading the statute as a whole, it is clear that it is concerned with the source of the information—the state, as opposed to oneself—and not the medium by which it is conveyed—a driver's license, passport, credit card, or the spoken word."); *Ocasio v. Riverbay Corp.*, No. 06 CIV. 6455 PAC KNF, 2007 WL 1771770, at *1, *6 (S.D.N.Y. June 19, 2007) (dismissing DPPA

claim where the plaintiff disclosed his personal information: "private actors themselves must have obtained the information from a state motor vehicle agency in order to be liable" under the DPPA).

**B. Sirius XM Obtained Plaintiff's Information From A Vehicle Dealer and U.S. Postal Service Records, Not From A State Department of Motor Vehicles.**

Here, it cannot reasonably be disputed that Sirius XM obtained Plaintiff's information from sources (i.e., a vehicle dealership and a U.S. Postal Service database) other than a state department of motor vehicles. *See* Section II, above. Neither source "*originat[ed]* from state department of motor vehicles . . . records," *Siegler*, 519 F. App'x at 605 (emphasis in original).

**C. No Further Discovery Could Provide Plaintiff with Evidence to Support His Claim.**

Sirius XM submits this motion early in the case, before the parties have engaged in substantial discovery, because discovery will not and cannot provide Plaintiff with the evidence necessary to survive this motion.

Plaintiff may invoke Rule 56(d),[4] but that rule does not require a Court to set parties on a lengthy path to discovery, let alone expensive class discovery, when "any such discovery would be futile." *Burlington N. Santa Fe R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003) (affirming denial of Rule 56(d) motion). Nor is an extension justified "merely because discovery is incomplete or desired facts are unavailable." *Twentieth Century Fox Television v. Empire Distribution Inc.*, No. CV 15-2158 PA (FFMX), 2016 WL 3092156, at *2 (C.D. Cal. Mar. 28, 2016) (Anderson, J.). And this Court has denied an attempt by a plaintiff to use class discovery as an excuse to postpone summary judgment, holding "the Court will not allow [plaintiff] to use Rule 56(d) as a mechanism for a fishing expedition on class claims." *Cummings v. Starbucks*

[4] Per the Committee Notes on the 2010 Amendments to the Federal Rules of Civil Procedure, current Rule 56(d) "carries forward without substantial change" the provisions of former Rule 56(f).

*Corp.*, No. CV 12-06345-MWF FFMX, 2013 WL 2096435, at *4 (C.D. Cal. May 14, 2013).

Rather, a party seeking a continuance under Rule 56(d) "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Twentieth Century Fox*, 2016 WL 3092156 at *2. (citing *Family Home*, 525 F.3d at 827). Failure to comply with these requirements is grounds for proceeding to summary judgment. *Family Home & Fin. Ctr., Inc. v. Red. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (affirming denial of Rule 56(d) motion where movant "failed to show how the evidence [was] 'essential' to oppose summary judgment").

Plaintiff alleged that "Defendant obtained Plaintiff's name and address, as well as his phone number, from the motor vehicle records." (Compl. ¶ 21.) But to date, Plaintiff has not provided Sirius XM with any such evidence, even though Sirius XM's counsel asked for it during the parties' meet and confer process. And, Sirius XM has presented evidence demonstrating precisely how Sirius XM obtained Plaintiff's information—from the dealership where Plaintiff bought his vehicle and from a U.S. Postal Service database. Sirius XM has advised Plaintiff for weeks that Sirius XM will allow Plaintiff to conduct reasonable due diligence to confirm the facts provided by Sirius XM, and has set a hearing date on this motion so that Plaintiff may do so if he wants.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Sirius XM respectfully requests that the Court grant its motion for summary judgment.

Dated: November 27, 2017

JONES DAY

By: */s/ John A. Vogt*
John A. Vogt

Attorneys for Defendant
SIRIUS XM RADIO INC.